

**FILED**
Nov 27 2013, 5:55 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**DAVID G. FIELD**
**BRANDON M. KIMURA**
Schultz & Pogue, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**ZACHARY J. EICHEL**
**MICHAEL L. EINTERZ**
Einterz & Einterz
Zionsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANONYMOUS PHYSICIAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 59A04-1303-MI-103 |
| | ) | |
| DIANA WININGER, | ) | |
| | ) | |
| Appellee-Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STEPHEN ROBERTSON, Commissioner, | ) | |
| Indiana Department of Insurance, and | ) | |
| DOUGLAS J. HILL, Panel Chair, | ) | |
| | ) | |
| Third Party-Respondents. | ) | |

APPEAL FROM THE ORANGE CIRCUIT COURT
The Honorable Larry R. Blanton, Judge
Cause No. 59C01-1211-MI-372

**November 27, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

In this interlocutory appeal, Anonymous Physician ("A.P.") appeals the trial court's denial of his motion for summary judgment in a medical malpractice action filed by Diana Wininger. The sole issue for our review is whether the trial court erred in denying A.P.'s summary judgment motion. We reverse.

FACTS AND PROCEDURAL HISTORY

In February 2007, Wininger saw A.P. for pain in her right foot. The following month, when Wininger returned for a follow-up appointment and told A.P. that her foot pain had worsened, A.P. recommended surgery. On March 20, 2007, A.P. shortened the second toe on Wininger's right foot and corrected a deformity. By July 2007, the second toe on Wininger's right foot was standing up at a 45 degree angle and Wininger continued to suffer from foot pain. A.P. recommended patches and strapping to alleviate Wininger's continued pain. In September 2007, A.P. recommended physical therapy. By October 2007, Wininger realized that she was not experiencing the relief she had expected. The toe on her right foot was still standing up at a 45 degree angle, and her foot hurt more than it did before the March 2007 surgery. Wininger testified in her deposition that she knew by October 2007 that she should get a second medical opinion.

In April 2009, more than two years after the surgery, Wininger went to see Dr. Kevin Powers for the second opinion. Before seeing Dr. Powers, Wininger filled out a patient intake form. One of the questions asked the reason for her visit, and Wininger responded that "[A.P.] messed [her] foot up." Appellant's Appendix at 79. After examining Wininger, Dr. Powers advised her that the second toe on her right foot was too short and recommended an additional surgery to re-lengthen the toe.

2

On March 9, 2011, nearly two years after seeing Dr. Powers, Wininger filed a proposed complaint for malpractice with the Indiana Department of Insurance alleging that A.P. rendered substandard care during the initial March 20, 2007 surgery. According to Wininger, A.P. failed to properly perform the surgery and failed to identify and treat the problems created by his negligence. A.P. filed a Petition for Preliminary Determination of Law and for Summary Judgment Based on the Statute of Limitations. Specifically, A.P. pointed out that the alleged act of malpractice occurred on March 20, 2007, and Wininger did not file her complaint until March 9, 2011, days shy of four years after the surgery. A.P. argued that Wininger's claims were barred by the two-year statute of limitations set forth in the Medical Malpractice Act. The trial court denied A.P.'s motion after a hearing and certified its order for interlocutory appeal. On A.P.'s motion, this Court accepted jurisdiction.

## DISCUSSION

When reviewing the grant or denial of summary judgment, we apply the same standard as the trial court. Workman v. O'Bryan, 944 N.E.2d 61, 64 (Ind. Ct. App. 2011), trans. denied. Summary judgment is proper only when the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. All facts and reasonable inferences therefrom are construed in a light most favorable to the nonmovant. Id. at 65. The statute of limitations defense is particularly suitable as a basis for summary judgment. Id. When the moving party asserts the statute of limitations as an affirmative defense and establishes that the action was commenced beyond the statutory period, the burden shifts to the nonmovant to

3

establish an issue of fact material to a theory that avoids the defense. Id. Any doubts as to the existence of a material issue are resolved in favor of the nonmovant. Id.

Ind. Code § 34-18-7-1 provides that a claim against a health care professional, based upon health care that was provided or should have been provided, must be filed within two years of the alleged act, omission, or neglect. This is an "occurrence-based statute of limitations that passes constitutional muster except in cases where the patient does not suffer symptoms that put the patient on notice that something may have gone wrong in the course of medical treatment." Johnson v. Gupta, 762 N.E.2d 1280, 1283 (Ind. Ct. App. 2002). In such cases, the statute of limitations is tolled until the patient experiences symptoms that would cause a person of reasonable diligence to take action that would lead to the discovery of the malpractice. Id.

A.P. argues that Wininger was put on notice as early as October 2007 that something may have gone wrong with her March 2007 surgery. Therefore, according to A.P., the statute of limitations was not tolled in this case, and Wininger should have filed her complaint within two years of the surgery. Wininger, on the other hand, argues that she did not know that something may have gone wrong in the course of medical treatment until she consulted with Dr. Powers on April 29, 2009, and learned that the second toe of her right foot was too short. Therefore, according to Wininger, her complaint was timely filed in March 2011.

Johnson, 762 N.E.2d at 1280, is instructive. There, Dr. Gupta performed a laser hemorrhoidectomy on Johnson in 1990. Almost immediately after surgery, Johnson became "incontinent of stool." Id. at 1282. Dr. Gupta assured Johnson that her

4

symptoms would disappear. Almost four years later, another doctor discovered that Johnson's rectal muscles had been severed during the procedure. Johnson filed a medical malpractice complaint within two years after that diagnosis, and the trial court granted summary judgment in favor of Dr. Gupta.

On appeal, Johnson argued that she did not discover the malpractice until she was informed by another doctor four years after the initial surgery that Dr. Gupta had severed her rectal muscles and caused her incontinence. However, we declined to hold that the statute of limitations is tolled until the patient discovers a causal link between the physician's actions and the patient's injury. Id. at 1283. A plaintiff does not need to be told malpractice occurred to trigger the statute of limitations. Brinkman v. Bueter, 879 N.E.2d 549, 555 (Ind. 2008). Rather, the statute is tolled until the patient experiences symptoms that would cause a person of reasonable diligence to take action that would lead to the discovery of the malpractice. Johnson, 762 N.E.2d at 1283. In Johnson, for example, we concluded that Johnson's fecal incontinence following a hemorrhoidectomy was apparently related to the alleged malpractice or at the very least would cause a person of reasonable diligence to take action that would lead to the discovery of the malpractice. Id. See also Gyn-OB Consultants, L.L.C. v. Schopp, 780 N.E.2d 1206, 1211 (Ind. Ct. App. 2003) (holding that statute of limitations was not tolled where almost immediately after surgery, patient experienced symptoms that should have led to the discovery of removal of skin tags from her vagina without her consent), trans. denied.

Here, as in Johnson and Schopp, Wininger experienced discernible symptoms apparently related to the alleged malpractice. Specifically, a few months after the surgery

5

to shorten her toe, that same toe stood up at a 45 degree angle, and Wininger continued to suffer foot pain.  By October, 2007 Wininger knew that she should get a second medical opinion.  When she saw Dr. Powers more than two years after the surgery, she explained that the reason for her visit was that "A.P messed [her] foot up."  Appellant's Appendix at 79.  Under these circumstances, the statute of limitations was not tolled, Wininger's complaint was not timely filed, and the trial court erred in denying A.P.'s summary judgment motion.

CONCLUSION

For the foregoing reasons, we reverse the trial court's denial of A.P.'s summary judgment motion.

Reversed.

MAY, J., and MATHIAS, J., concur.